UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

: 
: 
TIMOTHY ORAVSKY, on behalf of   : 
himself and all others similar situated  : 
: 
            Plaintiff,       :          Civil Action No. 10-3168 (JAP)
: 
    v.            : 
: 
ENCOMPASS INSURANCE COMPANY, : 
 et al.             :          **OPINION**
: 
: 
         Defendant.     : 
_____:

PISANO, District Judge.

Plaintiff Timothy Oravsky brings this putative class action against Encompass Insurance Company and Encompass Insurance Company of New Jersey (together "Encompass" or "Defendant") alleging that Encompass sold automobile insurance policies in New Jersey with reduced personal injury protection medical expense benefits ("PIP") without providing certain statutorily-prescribed disclosures and without obtaining required written waivers. The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as Plaintiff is a citizen of New Jersey and Defendants are Illinois corporations with their principal place of business in Illinois. Presently before the Court is a motion by Defendant to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and to dismiss/strike Plaintiff's class action allegations. For the reasons below, Defendant's motion

to dismiss will be granted as to Plaintiff's claim for the breach of the covenant of good faith and fair dealing, and it will be denied in all other respects.  Defendant's motion to dismiss/strike Plaintiff's class allegations will be denied.

## I.  Background[1]

A.  Facts Alleged

On or about July 18, 2004, Plaintiff filled out an application on the internet and was issued "a standard automobile insurance policy a/k/a a 'Classic Automobile Policy'" from non-party Continental Insurance Company of New Jersey ("Continental Insurance").  Compl. ¶ 26.  The application Plaintiff completed had preselected $15,000 as the amount of medical expense PIP benefits coverage and that is the level of coverage Plaintiff received.  In 2005, Plaintiff's policy was transferred to and subsequently underwritten Encompass.  Plaintiff's level of medical expense benefits remained unchanged.  In 2006, Plaintiff renewed his policy with Encompass, and again, the policy contained a $15,000 PIP medical expense limitation.

On or about March 3, 2007, Plaintiff was involved in an automobile accident in the insured automobile.  His medical bills for the treatment of the injuries he sustained exceeded $15,000.  Encompass has refused to pay for any medical bills in excess of the $15,000 policy limitation.

Plaintiff filed the present action seeking declaratory and/or injunctive relief, reformation of his policy to include a maximum PIP medical expense benefit of $250,000, and payment of his medical expenses up to that amount.  Plaintiff's claims rest on assertions

---

[1] In addressing a motion to dismiss, the Court must accept as true the allegations contained in a complaint.  *See Toys "R" US, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003); *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1301 (3d Cir. 1996).  Accordingly, the facts recited herein are taken from the complaint unless otherwise indicated and do not represent this Court's factual findings.

that Encompass sold automobile insurance to Plaintiff with a PIP medical expense coverage amount of less than $250,000 without obtaining an executed "coverage selection form" containing statutorily-required disclosures and waivers. In particular, Plaintiff asserts that he did not affirmatively choose the lesser amount in writing, as is required by law when PIP coverage of less than $250,000 is provided. *See* N.J.S.A. 39:6A-4.3 ("If none of the [lesser available amounts of] medical expense benefits options is affirmatively chosen in writing, the policy shall provide $250,000 medical expense benefits coverage.") Plaintiff alleges Defendant violated N.J.S.A. 39:6A-4, which mandates PIP benefits in all "standard automobile liability policies," and the requirements of N.J.S.A. 39:6A-4.3 and 23, which apply to an insured election of coverage limits.

B. New Jersey's No-Fault Insurance and Applicable Statutory Provisions

Pursuant to what are known as New Jersey's "No-Fault" statutes, automobile insurance policies in New Jersey are required to have personal injury protection ("PIP") benefits for persons who sustain bodily injury as a result of an automobile accident regardless of negligence, liability or fault. N.J.S.A. 39:6A-4. The amount of such benefits may not exceed $250,000, and, in a change from what was previously required, may be offered in lesser amounts of $15,000, $50,000, $75,000 and $150,000 per person per accident. N.J.S.A. 39:6A-4.3. However, if the policy offers PIP benefits of less than $250,000, New Jersey law requires the insurer to provide the insured with a coverage selection form ("CSF") containing "a statement, clearly readable and in 12-point bold type, in a form approved by the commissioner, that election of any of the [lesser PIP] benefits options results in less coverage than the $250,000 medical expense benefits coverage mandated" by prior law. N.J.S.A. 39:6A-4.3.

3

N.J.S.A. 39:6A-4 provides in the relevant part as follows:

Except as provided by [N.J.S.A. 39:6A-3.3] [N.J.S.A. 39:6A-3.1], every standard automobile liability insurance policy issued or renewed … shall contain personal injury protection benefits for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustain bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile, or as a pedestrian, caused by an automobile or by an object propelled by or from an automobile, and to other persons sustaining bodily injury while occupying, entering into, alighting from or using the automobile of the named insured, with permission of the named insured.

"Personal injury protection coverage" means and includes:

a. Payment of medical expense benefits in accordance with a benefit plan provided in the policy and approved by the commissioner, for reasonable, necessary, and appropriate treatment and provision of services to persons sustaining bodily injury, in an amount not to exceed $250,000 per person per accident. …

39:6A-4.3 provides in the relevant part as follows:

With respect to personal injury protection coverage provided on an automobile in accordance with [N.J.S.A. 39:6A-4], the automobile insurer shall provide the following coverage options:

***

e. Medical expense benefits in amounts of $150,000, $75,000, $50,000 or $15,000 per person per accident; except that, medical expense benefits shall be paid in an amount not to exceed $250,000 for all medically necessary treatment of permanent or significant brain injury, spinal cord injury or disfigurement or for medically necessary treatment of other permanent or significant injuries rendered at a trauma center or acute care hospital immediately following the accident and until the patient is stable, no longer requires critical care and can be safely discharged or transferred to another facility in the judgment of the attending physician. The coverage election form shall contain a statement, clearly readable and in 12-point bold type, in a form approved by the commissioner, that election of any of the aforesaid medical expense benefits options results in less coverage than the $250,000 medical expense benefits coverage mandated prior to the effective date of P.L.1998, c. 21.

4

If none of the aforesaid medical expense benefits options is affirmatively chosen in writing, the policy shall provide $250,000 medical expense benefits coverage … .

The requirements of a CSF as well as certain other written notices are found in N.J.S.A. 39:6A-23.  This statute requires that all policy applications be accompanied by a "buyer's guide," which must briefly describe all available policy coverages and benefits limits, identify which coverages are mandatory and optional under state law, identify the options offered by the insurer, and discuss the possible coordination of other health benefits coverages with the PIP coverage options.  N.J.S.A. 39:6A-23.  It also requires that the insurance application contain a CSF specifying the premium rate differences between the various coverages.  *Id.*  On the CSF the applicant is to indicate the options selected, then sign and return the CSF to the insurer.  *Id.*  N.J.S.A 39:6A-23 provides in the relevant part:

a. No new automobile insurance policy shall be issued … unless the application for the policy is accompanied by a written notice identifying and containing a buyer's guide and coverage selection form. The buyer's guide shall contain a brief description of all available policy coverages and benefit limits, and shall identify which coverages are mandatory and which are optional under State law, as well as all options offered by the insurer.

The buyer's guide shall also contain a statement on the possible coordination of other health benefits coverages with the personal injury protection coverage options, the form and contents of which shall be prescribed by the Commissioner of Insurance.

The coverage selection form shall identify the range of premium rate credit or dollar savings, or both, and shall provide any other information required by the commissioner by regulation.

The applicant shall indicate the options elected on the coverage selection form which shall be signed and returned to the insurer.

***

e. A properly completed and executed coverage selection form shall be prima facie evidence of the named insured's knowing election or rejection of any option.

## II.  Discussion

### A.  Motion to Dismiss Under Rule 12(b)(6)

Defendant moves to dismiss the complaint on several grounds.  First, Defendant alleges that N.J.S.A. 39:6A-4, 4.3 and 23 do not apply to Plaintiff's policy because it is not a "standard" policy but rather one that insures an antique automobile.  Second, Defendant asserts that Plaintiff has no private right of action under those statutes.  Third, Defendant argues that the complaint fails because there are no allegations of negligence on the part of Defendant.  Fourth, Defendant claims that it is a renewal carrier and complied with all statutory obligations of a renewal carrier.  Last, Defendant contends that Plaintiff's claims for breach of the implied covenant of good faith and fair dealing, breach of contract, and New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, each fail to independently state a claim upon which relief can be granted.

### 1.  Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  The Supreme Court set forth the standard for addressing a motion to dismiss under Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The *Twombly* Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Id.* at 555 (internal citations omitted); *see*

*also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]." (internal quotation marks omitted)).  Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ..." *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).

The Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  When evaluating a motion to dismiss for failure to state a claim, district courts conduct a two-part analysis.

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir.2009) (quoting *Iqbal*, 129 S.Ct. at 1949-50).  A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570).  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Fowler*, 578 F.3d at 211 (citations omitted).

As to the applicable substantive law, "a federal court sitting in diversity ... [is] to apply state law as interpreted by the state's highest court.  In the absence of guidance from that court [a federal court is] to refer to decisions of the state's intermediate appellate courts for assistance in determining how the highest court would rule."  *McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 825 (3d Cir. 1994).

<u>2.  Analysis</u>

<u>a.  Whether Plaintiff's Policy is Exempt from Insurance Laws</u>

Defendant first argues that N.J.S.A. 39:6A-4, 4.3 and 23 do not apply to the policy at issue because it is not a "standard" automobile policy but rather is a specialty policy covering a "historic motor vehicle," as defined by N.J.S.A. 39:3-27.3.  In support of its argument, Defendant relies on *MetLife Auto and Home v. Palmer*, 365 N.J. Super. 293 (App. Div. 2004), which addressed the issue of "whether an insurance carrier providing specialty insurance for an antique automobile can avoid paying pro rata contribution under [New Jersey's] anti-stacking provision, N.J.S.A. 17:28-1.1c, by excluding uninsured motorist (UM) coverage for injuries sustained while occupying an owned vehicle not insured by the antique automobile policy."  *MetLife*, 365 N.J. Super. at 295.  The court found, *inter alia*, that an antique automobile insurance policy that specifically excluded UM coverage for insureds occupying vehicles other than the antique vehicle covered was not an "applicable coverage" envisioned by N.J.S.A. 17:28-1.1.  In so finding, the Court distinguished the antique car policy at issue from a standard automobile policy, noting that the former covered a "limited use" vehicle and was conditioned upon the insured maintaining a separate "standard or regular motor vehicle insurance policy."  365 N.J. Super. at 300.

The Court finds that *MetLife* provides no basis for excluding Plaintiff's policy from the requirements of the N.J.S.A. 39:6A-4, 4.3 and 23.  As an initial matter, contrary to Defendant's assertion, *MetLife* does not stand for the proposition that "an antique [automobile] policy is not covered by New Jersey automobile insurance laws."  Reply Brf. at 2; *see also* Moving Brf. at 8 (arguing that *MetLife* establishes that "antique automobile policies, like plaintiff's, fall outside the provisions of New Jersey's automobile insurance laws...).  *MetLife* involved the apportionment of contribution between insurers providing uninsured motorist coverage.  The case examined the validity of an exclusion in an antique automobile policy pursuant to which the insurer barred UM coverage for injuries sustained by any person "[w]hile 'occupying' … any motor vehicle owned by [the insured] … which is not insured for coverage" under the antique automobile policy.  The *MetLife* court found that, given certain unique qualities of the specialty policy, the exclusion was not inconsistent with the express requirements or legislative purposes of N.J.S.A. 17:28-1.1, which mandates the inclusion of UM coverage in motor vehicle policies and establishes a statutory apportionment scheme among carriers.  The court expressly noted that its determination was "limited to [the insurer's] entitlement to a pro rata contribution" and did not address the validity of the provision in the context of potentially denying UM coverage in certain circumstances.

Further, while it is true that *MetLife* distinguished "standard" automobile liability policies from the specialty antique car coverage that was at issue in that case, that distinction does not further Defendant's argument here.  Where the court in *MetLife* states, for example, that "the policy is not a standard automobile policy but a specialty policy providing coverage for an antique automobile," it is at best unclear as to whether the court is using the term "standard" in a more general sense to describe an ordinary or typical policy or referencing the

term as it is used and defined in the "Automobile Insurance Cost Reduction Act," N.J.S.A 39:6A–1.1, *et seq.*, (the "Act").  In any event, given New Jersey's statutory scheme with respect to automobile insurance as discussed below, the Court does not read *MetLife* as excluding antique automobile policies from all New Jersey insurance laws applicable to "standard" policies.

Under New Jersey's system of insurance, there are three types of automobile insurance – standard, basic and special.  Every owner of a motor vehicle "registered or principally garaged" in the state must maintain automobile insurance, and, as New Jersey's Supreme Court has explained, "must purchase standard, basic, or special insurance coverage for their automobiles."  *Zabilowicz v. Kelsey*,  200 N.J. 507, 509 (2009) (citing N.J.S.A. 39:6B-1).  Further, "every automobile insurance policy must provide "personal injury protection … benefits" -- the payment of medical expenses to the insured and his family household members who suffer bodily injury in an automobile accident."  *Id.* (citing N.J.S.A. 39:6A-4, -3.1(a), -3.3(b)(1)).

As to PIP benefits, the New Jersey Supreme Court has explained that the three types of insurance provide a different level of coverage:

> A "standard policy" provides "personal injury protection coverage" up to $250,000 for all "reasonable, necessary, and appropriate" treatment for bodily injuries.  N.J.S.A. 39:6A-4.  A "basic policy," which is available as "an alternative to the mandatory coverage[ ]" of the standard policy, affords more limited benefits.  N.J.S.A. 39:6A-3.1.  In particular, it provides "personal injury protection coverage" up to only $15,000 for all "reasonable and necessary treatment" for bodily injuries and up to $250,000 for specified treatments relating to certain permanent injuries.  *Ibid.*  Finally, the "special policy" provides only "emergency personal injury protection coverage" up to $250,000 for emergency treatment immediately following an automobile accident and extending until the patient is discharged from acute care.  N.J.S.A. 39:6A-3.3(b)(1).

10

*Sanders v. Langemeier*, 199 N.J. 366, 375-76 (2009).  A "[s]tandard automobile insurance policy," is expressly defined in the Act as "an automobile insurance policy with at least the coverage required pursuant to [N.J.S.A. 39:6A–3 (liability coverage)] and [39:6A–4 (PIP coverage)] and a "[b]asic automobile insurance policy," is defined as "an automobile insurance policy pursuant to [39:6A–3.1 (alternative to mandatory coverages of 39:6A–3, -4)]."  *See* N.J.S.A. 39:6A-2.  A "special" policy is one that is available only to certain individuals who qualify as "eligible low income individuals."  39:6A-3.3.

Given the above authority, notwithstanding the fact that Plaintiff's policy insured an antique automobile, it would seem that the policy must be either a "standard," "basic" or "special" automobile insurance policy.  In arguing that Plaintiff's policy is not a standard policy, Defendant does not argue Plaintiff's policy is a basic or special policy.  Rather, Defendant would have the Court read *MetLife* as creating an entirely new type of automobile insurance applicable to antique automobiles, to which, apparently, none of New Jersey's insurance laws governing "standard" insurance policies would apply.  *MetLife* simply does not go that far.

While Defendant has clearly pointed out the differences between an antique car policy and a typical automobile policy Defendant fails to explain how these differences justify excluding the policy from the requirements of N.J.S.A. 39:6A-4, -4.3, and -23, and whether such exclusion would further (or, at the very least, not contradict) any of the legislative purposes of the statutes. Consequently, the Court rejects Defendant's argument that the policy at issue is not subject to the requirements of N.J.S.A. 39:6A-4, 4.3 and 23, and, to the extent Defendant seeks dismissal of the complaint on that ground, the motion is denied.

b.  Whether Plaintiff has a Cause of Action

Next, Defendant argues dismissal is warranted because it contends that the statutes upon which Plaintiff's claims are premised do not allow for a private right of action.  In so arguing, however, Defendant misconstrues the nature of Plaintiff's claim.

As an initial matter, Plaintiff is seeking the recovery of PIP benefits, an action clearly contemplated by the Act.  *See* N.J.S.A. 39:6A-13.1 (applicable statute of limitations for actions to recover PIP benefits).  Moreover, although the first count of Plaintiff's complaint pleads "Breach of Statutory Duty," the nature of Plaintiff's claim is grounded in reformation, an equitable action, and the Court finds that under New Jersey law Plaintiff has stated such a claim.  Plaintiff alleges in the first count of his complaint that Defendants failed to comply with N.J.S.A. 39:6A-4.3 and 39:6A-23 by (1) not providing Plaintiff with a CSF which is required to contain a "statement, clearly readable in 12-point bold type … that election of" PIP coverage in an amount less than $250,000 results in less coverage than had been previously mandated, N.J.S.A. 39:6A-4.3; and (2) not obtaining from Plaintiff a signed coverage selection form confirming his selection of the lesser coverage amount.  Thus, the components underlying Plaintiff's claim are Defendant's alleged failure to provide a mandated disclosure and failure to obtain an affirmative selection of medical expense benefits coverage in writing.  Plaintiff seeks declaratory relief and reformation of his insurance contract to provide for a $250,000 limit for medical expense PIP benefits coverage.

Generally, the equitable remedy of reformation is available "where there is mutual mistake or where a mistake on the part of one party is accompanied by fraud or other unconscionable conduct of the other party." *Heake v. At. Cas. Ins. Co.*, 15 N.J. 475, 481, 105 A.2d 526 (1954); *see also Phillips v. Metlife Ins. Co.*, 378 N.J. Super. 101, 104, 874 A.2d 617

(App. Div. 2005).  New Jersey courts have noted that "reformation is available as a remedy for an insurer's failure to comply with notice requirements."  *Pierides v. Geico Insurance Company*, 2010 WL 1526377 at \*5 (N.J. Super. App. Div. April 19, 2010) (insurer allegedly failed to provide buyer's guide in accordance with N.J.S.A. 39:6A-23).  Also, courts have allowed reformation of an insurance contract when that contract fails to meet statutory requirements.  *See, e.g.*, *Hanco v. Sisoukraj*, 364 N.J. Super. 41 (App. Div. 2003) (reforming policy that failed to conform to statutory standard providing minimum coverage for lessees). *See also* 2 Couch on Ins. § 26:1 ("Clearly, where the policy is violative of a statute, reformation is required so as to assure that the coverage will meet statutorily prescribed minimums.")

Here, as noted earlier, Plaintiff alleges that he did not receive the requisite notice that choosing PIP medical benefit coverage in an amount under $250,000 would result in less coverage than had previously been required by law.  Moreover, the Court takes particular note of Plaintiff's allegation that at no time did he ever "affirmatively select and choose in writing a $15,000 PIP medical expense benefit." Compl. ¶ 32.  Accepting Plaintiff's allegations as true as the Court must, the level of PIP benefits reflected in Plaintiff's policy would appear to contrary to N.J.S.A. 39:6A-4.3, pursuant to which a policy must provide $250,000 medical expense benefits coverage unless a lesser option "is affirmatively chosen in writing." N.J.S.A. 39:6A-4.3.  Consequently, Plaintiff filed this suit seeking to bring the policy in compliance with the statutory requirements.  In light of the authorities cited above, the Court finds that Plaintiff's claim is adequately pled under New Jersey law.

c.  Whether Plaintiff's Claims Require an Allegation of Negligence

For similar reasons, the Court rejects Defendant's contention that Plaintiff's claims must be dismissed because he has failed to allege negligence on the part of Defendant.  In this regard, Defendant relies upon *Bilotti v. USAA Cas. Ins. Group*, 2007 WL 4119220 (N.J. Super. App. Div. 2007).  In that case, a plaintiff sought reformation of an automobile policy to increase its UM coverage limits from $15,000/$30,000 to a single limit of $300,000 per claim, which the plaintiff claimed was requested at the time the policy was purchased.  The *Bilotti* plaintiff contended that because the insurer could not produce a CSF executed by the insured at the time the policy was purchased, reformation was appropriate.  The court, disagreed, however, noting that while evidence of statutory compliance (*i.e.*, obtaining an executed CSF) affords an insurer statutory immunity from suit, *see* N.J.S.A. 17:28-1.9,[1] the converse (*i.e.*, failure to obtain a CSF) did not automatically entitle the plaintiff to relief and did not relieve the plaintiff of her burden of proof on her claim that reformation was warranted.  The court stated:

> We note that reformation is an equitable remedy that should only be granted where the moving party is able to show through clear and convincing proof that there is mutual mistake or a mistake on the part of one party is accompanied by fraud or other unconscionable conduct of the other party.

---

[1] N.J.S.A. 17:28-1.9 provides as follows:

> The coverage selection form required pursuant to [N.J.S.A. 39:6A-23] shall contain an acknowledgement by the named insured that the limits available to him for uninsured motorist coverage and underinsured motorist coverage have been explained to him and a statement that no person, … shall be liable in an action for damages on account of the election of a given level of motor vehicle insurance coverage by a named insured as long as those limits provide at least the minimum coverage required by law or on account of a named insured not electing to purchase underinsured motorist coverage, collision coverage or comprehensive coverage, except for that person causing damage as the result of his willful, wanton or grossly negligent act of commission or omission.

> Reformation will not be granted on the grounds of mistake resulting from the complaining party's own negligence. This is particularly applicable when the negligence is related to the duty imposed upon an insured to examine his policy upon receipt, and if its terms are found to deviate from the original contract agreed upon, to notify the insurer immediately and refuse to accept the policy.

*Bilotti*, 2007 WL 4119220 at *4 (citations, quotations and alteration omitted). Ultimately, the court held that the plaintiff was not entitled to reformation noting, *inter alia*, that the insured had failed over a period of years to raise an issue regarding the alleged discrepancy between the limits allegedly requested and those actually received and, further, the plaintiff had failed to show the insured had engaged in fraud or unconscionable conduct.

Unlike *Bilotti*, however, Plaintiff here is not alleging that the policy he was ultimately issued failed to reflect the coverage choices he made due to a mistake on the part of the insurer. Nor is Plaintiff alleging that he is entitled to reformation simply because Defendant allegedly failed to obtain a CSF. Rather, Plaintiff seeks reformation allegedly to bring the policy in compliance with the applicable statute. At the motion to dismiss stage where the Court is merely assessing the adequacy of the pleadings, nothing in *Bilotti* directs that dismissal is warranted here.

d.  Whether Defendant Was a "Renewal" Carrier

Defendant next argues that it complied with all statutory obligations as a "renewal" carrier (as opposed an insurer issuing a "new" policy) and is entitled to immunity pursuant to N.J.S.A. 17:28-1.9. According to Defendant, the only "new" policy issued to Plaintiff was the policy issued by non-party Continental Insurance, and Defendant contends that all subsequent policies it issued to Plaintiff were renewals.

The complaint alleges that Plaintiff originally purchased a classic car policy from Continental Insurance. It further alleges that "the policy" was later "transferred and underwritten by" Defendant. Compl. ¶ 30. However, in order to determine whether Defendant's obligations were that of a "renewal" carrier or otherwise, more factual development is required regarding the circumstances of, at a minimum, the "transfer[] and underwrit[ing]" of the policy. Consequently, the issue is inappropriate for resolution on a 12(b)(6) motion.

<u>d. Good Faith and Fair Dealing, Breach of Contract and Consumer Fraud Act Claims</u>

The Court next turns to Defendant's arguments with respect to dismissal of Plaintiff's claims for breach of the covenant of good faith and fair dealing, breach of contract, and violation of the CFA. First, Defendant contends the breach of contract and breach of covenant claims must be dismissed because the facts alleged fail to state a claim. Defendant argues that Plaintiff received the benefits that were contracted for (*i.e.*, $15,000 in PIP medical expense benefits) and, therefore, there can be no claim for bad faith denial of benefits. Second, Defendant asserts that these claims along with the CSF claim must be dismissed because the remedies provided by the No-Fault statutes for the recovery of PIP benefits are exclusive.

<u>Breach of Covenant of Good Faith and Fair Dealing</u>

The second count of the complaint alleges that Defendant breached the covenant of good faith and fair dealing "by failing to provide Plaintiff and the Class with information in an approved form as set forth in a coverage election [sic] form , … by failing to obtain a signed coverage selection forms," and by failing to provide PIP coverage of $250,000 if a lesser amount was not affirmatively chosen in writing. Compl. ¶ 59. The complaint further

16

alleges that Defendant committed a breach of the covenant "by erroneously informing Plaintiff and members of the subclass … that their… policies did not provide for PIP medical expense benefits coverage up to $250,000 … and/or erroneously denying claims." Compl. ¶ 60. Plaintiff's good faith and fair dealing claim is virtually identical to Plaintiff's breach of contract claim, the only difference being that the good faith and fair dealing claim purports to be based in part on Defendant's alleged failure to provide a statutorily-approved CSF and failing to obtain an executed CSF.

It is well-settled that "[a] covenant of good faith and fair dealing is implied in every contract in New Jersey ..." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001)). As such, "[e]very party to a contract ... is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 223-24 (2005). However, the allegations regarding an alleged failure to provide and obtain a CSF do not support Plaintiff's claim because they involve neither the performance or enforcement of the insurance contract, so such a claim for breach of the covenant would not extend to those allegations. Indeed, any obligation to provide a CSF would arise prior to entry into an insurance contract, and "it is axiomatic that a contract must exist between two parties before a court will infer" the existence of the covenant of good faith and fair dealing. *J.M. ex rel. A.M. v. East Greenwich Tp. Bd. of Educ.*, 2008 WL 819968, at *9 (D.N.J. 2008). As the remaining allegations

supporting Plaintiff's claim are identical to the breach of contract claim, the second count of the complaint fails as it is duplicative of the breach of contract claim.[2]

Breach of Contract

Turning to the third count of the complaint, Plaintiff argues that he has stated a claim for breach of contract because, taking as true Plaintiff's allegation that he did not affirmatively choose in writing a lesser level of PIP coverage, New Jersey's No-Fault statutes as well as the terms of the policy dictate that Plaintiff was entitled to PIP benefits of $250,000 and Defendant breached the policy in refusing to provide the same.  Indeed, the relevant policy (*i.e.*, the one in effect at the time of Plaintiff's accident) expressly states that "[a]ny part of this policy that conflicts with state law is automatically changed to conform to the law."  D'Aloia Decl., Ex. D (Policy) at HIA0220.  As such, as the Court at this stage is merely addressing the sufficiency of the pleadings, Defendant's motion as to the third count of the complaint is denied.

---

[2] Additionally, to the extent that the second count can be construed as asserting a cause of action for breach of an insurer's duty of good faith in processing a claim, it must be dismissed.  As summarized by New Jersey's Appellate Division:

> *Pickett* [*v. Lloyd's*, 131 N.J. 457 (1993)]  [held] that an insurer owes a duty of good faith to its insured in processing a first-party claim, *id.* at 467, and that the insurer may be liable to its insured for consequential economic losses for the insurer's bad faith in either delaying the processing of the claim or in failing to pay benefits, *id.* at 481.  However, an insured's right to pursue a common law action for consequential damages pursuant to *Pickett* is not applicable to PIP actions.  *Endo Surgi Ctr. v. Liberty Mut. Ins.*, 391 N.J. Super. 588, 592-96 (App. Div. 2007).  Rather, because PIP benefits are statutory in nature, "the sole remedy for a wrongful denial of PIP benefits is an award of the interest mandated by N.J.S.A. 39:6A-5(h) and attorney's fees."  *Id.* at 594.

*Endo Surgical Center v. Allstate New Jersey Ins. Co.*, 2009 WL 4877155, at *3 (December 18, 2009).

Consumer Fraud Act

Last is Plaintiff's claim CFA claim.  In arguing that Plaintiff's claim fails to state a claim upon which relief can be granted, Defendant points to a line of cases in which New Jersey courts that have recognized that PIP benefits are "statutory in nature" and have held, therefore, that the remedies for withholding such benefits provided by the No-Fault laws are "exclusive."  *See Endo Surgi Ctr., P.C. v. Liberty Mutual Ins. Co.*, 391 N.J. Super 588, 592-93 (App. Div. 2007) (holding that a bad faith claim could not be maintained against an insurer for alleged bad faith in withholding payment of PIP benefits because the statutory procedures and remedies for enforcement of an insured's right to PIP benefits are exclusive as part of the scheme of the No-Fault Act); *see also Milcarek v. Nationwide Ins. Co.*, 190 N.J. Super. 358, 365-70 (App. Div. 1983) (punitive damages not available for bad faith failure to pay PIP benefits); *Kubiak v. Allstate Ins. Co*., 198 N.J. Super. 115, 118-20, (App. Div. 1984) (same, and further finding that right to recover counsel fees and interest "should sufficiently guard against a situation where an injured party is subjected to protracted aggravated consequences because of an insurer's failure to pay."); *Pierzga v. Ohio Cas. Group of Ins. Cos.*, 208 N.J. Super. 40, 44-45, (App. Div. 1986) (no right exists to recover punitive damages under no-fault statute or CFA where insurer wrongfully withheld PIP benefits).  As such, Defendant argues that Plaintiff's CFA claim must be dismissed.

The Court is not persuaded by Defendant's argument.  As an initial matter, the instant matter differs from the authorities relied upon by Defendant.  Here, Plaintiff alleges not merely a wrongful denial of benefits, but rather that Defendant, in contracting to provide insurance to Plaintiff, intentionally failed to furnish certain mandated disclosures to Plaintiff with regard to PIP benefits coverage and, further, that Defendant provided a policy to Plaintiff

with PIP benefits of less than $250,000 without obtaining written confirmation of the

Plaintiff's selection of a lesser limit.

It is clear that in New Jersey the reach of the CFA extends to "the sale of insurance

policies as goods and services that are marketed to consumers." *Lemelledo v. Beneficial*

*Management Corp. of America*, 150 N.J. 255, 265 (1997).  Moreover, the CFA is to "be

applied broadly in order to accomplish its remedial purpose, namely, to root out consumer

fraud."  *Id.* at 264.  So while a plaintiff seeking only to recover wrongfully withheld PIP

benefits under a contract of insurance is limited to recovering the amount of the overdue

benefits plus interest and counsel fees, *see, e.g.*, *Pierzga v. Ohio Cas. Group of Ins. Cos.*, 208

N.J. Super. at 44-45, the Court can discern no reason why a party who was misled, deceived

or was otherwise a victim of unlawful practices during the process of entering into an

insurance contract for PIP coverage should be excluded from seeking the remedies provided

by the CFA.  Defendant's motion to dismiss Plaintiff's CFA claim, therefore, is denied.

B.  Motion to Dismiss/Strike Class Allegations

Plaintiff purports to bring this action on behalf of himself and all members of the

following class (the "Class"):

> All persons who, since at least June 21, 2004 (or such date as discovery may
> disclose) have been policyholders owning or beneficiaries of standard
> automobile liability insurance policies sold in the State of New Jersey by
> Defendants that have provided limits of less than $250,000 in Personal Injury
> Protection (PIP) medical expense benefits coverage and as to whom
> Defendants does not have their affirmative choice in writing in the form
> proscribed by N.J.S.A. 39:6A-4.3 and 39:6A-23.

Compl. ¶ 43.  The action is also brought on behalf of a subclass (the "Subclass") consisting of

"[a]ll persons in the Class who, having suffered injuries in a covered accident, had incurred

medical expenses in excess of the limit of the medical expense PIP coverage stated in their

20

policies." *Id.* Defendant seeks dismissal of Plaintiff's class claims arguing that the requirements for maintaining a class action under Rule 23 cannot be met. Specifically, Defendant contends that (1) the claims in the complaint are inappropriate for class resolution because raise individualized fact issues that will predominate; and (2) plaintiff is an inadequate class representative because his policy is a "specialty" policy covering an antique car.

Plaintiff argues that Defendant's motion is premature. Although the Court is somewhat skeptical that the facts will show that class resolution is appropriate in this case, the Court agrees that the motion is premature. Decisions from this District as well as others "have made clear that dismissal of class allegations at this sta[g]e should be done rarely and that the better course is to deny such motion because 'the shape and form of a class action evolves only through the process of discovery." *Myers v. MedQuist, Inc.*, 2006 WL 3751210, at * 4 (D.N.J. December 20, 2006) (citing *Gutierrez v. Johnson & Johnson, Inc.*, 2002 U.S. Dist. LEXIS 15418, *16 (D.N.J. 2002); *Abdallah v. Coca-Cola Co.*, 1999 U.S. Dist. LEXIS 23211 (D. Ga. July 16, 1999); 7AA Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 1785.3 (the practice employed in the overwhelming majority of class actions is to resolve class certification only after an appropriate period of discovery)). As the court in *Myers* noted,

> [W]hile it is the plaintiff's burden to prove that the proposed class action satisfies each of the required elements of Rule 23(a) and one of the prerequisites of Rule 23(b), *see Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994), the "court may find it necessary ... to analyze the elements of the parties' substantive claims and review facts revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied." *In re Ford Motor Ignition Switch Prods. Liab. Litig* ., 174 F.R.D. at 338 (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996)). Moreover, "[a]s a practical matter, the court's [certification decision] usually should be

predicated on more information than the complaint itself affords ... [and][t]hus, courts frequently have ruled that discovery relating to the issue whether a class action is appropriate needs to be undertaken before deciding whether to allow the action to proceed on a class basis." 5C Wright, Miller & Kane, Federal Practice & Procedure Civil 3d § 1785.3.

2006 WL 3751210, at * 5.  The Court, therefore, will deny Defendant's motion to dismiss Plaintiff's class allegations.

## III.  Conclusion

For the reasons in this Opinion, the Court grants Defendant's motion to dismiss as to Plaintiff's claim for breach of the covenant of good faith and fair dealing.  In all other respects, Defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) is denied. Defendant's motion to dismiss Plaintiff's class allegations is likewise denied.  An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated:  April 28, 2011